UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――

HALBERT CROMPTON,

        Petitioner,                 Case No. 1:07-cv-797

v.                                          Honorable Paul L. Maloney

KENNETH McKEE,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was convicted in the Ionia County Circuit Court of attempted armed robbery, MICH. COMP. LAWS §§ 750.92 and 750.529; and possession of marijuana, MICH. COMP. LAWS § 333.7403(2)(d). Petitioner was sentenced as a fourth habitual offender to concurrent prison terms of fifteen to thirty years[1] for the armed robbery conviction and 224 days for the drug possession conviction. In his *pro se* petition, Petitioner raises the following grounds for habeas corpus relief:

I. PETITIONER'S CONVICTION FOR ATTEMPTED ARMED ROBBERY SHOULD BE SET ASIDE FOR THE REASON THAT THERE WAS INSUFFICIENT EVIDENCE TO PROVE THAT PETITIONER WAS ARMED AT THE TIME OF THE ROBBERY, AND WAS THE JURY PROPERLY INSTRUCTED ON THE ELEMENTS OF THE CRIME.

II. PETITIONER SHOULD BE RE-SENTENCED WHERE AN ABUSE OF DISCRETION WAS MADE BY THE COURT, TRIPLING PETITIONER'S MINIMUM SENTENCE, IMPOSING 180 MONTHS INSTEAD OF

---

[1] The original judgment of sentence included a sentence of fifteen to sixty years for the attempted armed robbery conviction. On appeal, the Michigan Court of Appeals found that a clerical error had occurred and remanded the case for correction of the judgment of sentence to reflect the thirty-year maximum imposed by the trial court at the sentencing hearing.

BETWEEN 14 AND 58 MONTHS UNDER THE SENTENCING GUIDELINES BECAUSE PETITIONER HAD TWO ALLEGEDLY PRIOR FELONY CONVICTIONS NOT ACCOUNTED FOR IN THE GUIDELINES.[2]

Respondent has filed an answer to the petition (docket #12) stating that the petition should be denied. Upon review and applying the AEDPA standards, I find that Petitioner's claims are without merit. Accordingly, I recommend that the petition be denied.

## Procedural History

### A.   Trial Court Proceedings

The state prosecution arose from the attempted robbery at the Super 8 Motel on M-66 in Ionia County on June 29, 2004. Petitioner was tried before a jury on December 15, 2004.

Jamie Porter testified that she was employed at the Super 8 on M-66 on June 29, 2004. (6/29/04 Trial Transcript (Tr.), docket #17.) Porter worked third shift that night, 10:00 p.m. to 6:00 a.m. (*Id.*) While Porter was watching television, a man came in and asked the cost of a room. After Porter told him, the man responded that he was going back outside to ask his girlfriend if that was okay. (*Id.*) Porter continued to watch television, but realized after a couple of moments that the man was still standing there. The man said, "this [is] a holdup, give me all your money." (Tr. 79, 101.) Porter could not see a weapon, but believed that Petitioner had a gun because he had his hand positioned in the front pocket of his sweatshirt in a way that looked like he was holding a gun. (Tr., 80, 84, 93, 99, 101.) Porter reached over to the cash drawer, which was behind a wall. (Tr., 79.) The man told her not to push any buttons and asked her to let him behind the counter.

---

[2] This issue was not presented in the petition filed in this Court (docket #1). According to Respondent, Petitioner filed an amended petition on February 20, 2008 that included this second ground for relief. While Respondent obviously received an amended petition, no such amendment was filed in the Court on February 20, 2008 or any other date. Nevertheless, I will consider the claim for purposes of this Report and Recommendation.

- 2 -

Porter went into the office, locked the door and called 911. (*Id*.) The man jiggled the doorknob and asked her what she was doing. (Tr. 82.) The man left out the front door and walked past the office window. (Tr,. 88-89.)

Porter stayed on the line with the 911 operator until the police arrived. (Tr., 80.) According to Porter, nothing was taken from the cash box. (Tr., 100.) Porter described the robber as approximately 6 feet tall, 180-200 pounds, wearing jeans and a hooded Michigan State sweatshirt. (Tr., 83.) About fifteen minutes after the incident, the police brought the man back to the Super 8 for Porter to identify. (Tr., 84.) Porter identified Petitioner as the man who attempted to rob her. (Tr., 83.) Porter testified that she was very scared and nervous during the incident because she "didn't know if he had a gun, if he was going to shoot the lock off and come or if he was going to jump over the counter." (Tr., 86.)

Sergeant William Hoskins of the Ionia County Sheriff's Office testified that he was on patrol with Deputy Denny on the night of June 29, 2004. (Tr., 102-03.) At about 1:20 a.m., Hoskins was driving past the driveway shared by the Super 8 and a gas station when he noticed a red Ford Mustang coming out of the driveway with its headlights off. (Tr., 103.) As the car crossed the lanes of M-66, the headlights came on and it entered the west bound ramp of I-96. (*Id*.) The car was not moving erratically or at a high rate of speed. (Tr., 107.) Shortly thereafter, the officers received a call from central dispatch stating that an armed robbery had just occurred at the Super 8. (Tr., 103.) Hoskins drove over to the Super 8 and made contact with the clerk, while Deputy Denny took the patrol car to look for the suspect. (*Id*.) Denny made a radio call to the Michigan State Police regarding the red Ford Mustang. (Tr., 104.) Hoskins testified that the Michigan State Police apprehended Petitioner and brought him to the Super 8. He was wearing a gray hooded Michigan

State sweatshirt. (*Id*.) After Porter identified Petitioner as the robber, he was arrested. (Tr., 105.) Hoskins asked Porter about the possibility of a surveillance video, but she told him that the video equipment did not work. (*Id*.) Hoskins did not check for finger prints because there was no allegation that Petitioner touched anything and finger prints would not necessarily establish that Petitioner attempted to commit a robbery. (*Id*.)

Deputy Brent Denny of the Ionia County Sheriff's Office testified that he and Sergeant Hoskins observed a red Ford Mustang leaving the common driveway of the Pilot gas station and the Super 8 motel without activating the headlights. (Tr., 119.) Nothing else about the car caused the officers to be concerned. (Tr, 122-23.) Because the headlights came on when the car pulled out into the roadway, they decided not to make a stop. (Tr., 119.) A short time later, they received a radio call about a robbery at the Super 8. (*Id*.) Denny made a call to Troopers Fink and Drew at the Michigan State Police Post in Ionia and alerted them to the red Ford Mustang that they saw leaving the parking lot. (Tr., 120.) Hoskins went inside the Super 8 to interview the clerk, while Denny searched the parking lot for the suspect. (*Id*.) The Troopers brought the driver of the Mustang back to the Super 8, where he was identified by the clerk. (Tr., 120, 123.) When she made the identification, the clerk was standing in the doorway to the lobby and Petitioner was standing outside the Trooper's car. Denny shined a flashlight on Petitioner's face. (Tr., 124.) The suspect was wearing a gray Michigan State sweatshirt and a pair of denim shorts. (Tr., 120.) The Troopers turned Petitioner over to Denny and Hoskins. (Tr., 123.) Petitioner's demeanor was peaceful, but he asked what he was being arrested for. (*Id*.) The Troopers also turned over to Denny a small quantity of suspected marijuana that was seized from the suspect. (Tr., 121.)

Bradley Choate, supervisor of the drug analysis unit with the Michigan State Police Crime Lab, testified as an expert in drug analysis. (Tr., 110.) Choate testified that the plant material that he tested was marijuana and weighed 2.10 grams, which was enough for two to four marijuana cigarettes. (Tr., 112-15.)

Michigan State Police Trooper Michael Fink testified that he and his partner were at the Ionia post when they received the call at 1:26 a.m. about the Super 8 robbery. As they were driving to the Super 8, which was about four miles south of the post, they received the call from Sergeant Hoskins and Deputy Denny asking them to look for a red Ford Mustang that they saw exiting the driveway from the Super 8. (Tr., 125-26.) Fink drove west on I-96 in an attempt to locate the Mustang. (Tr., 126.) Fink received information from central dispatch that the suspect was a black male, about 6' 2" tall, wearing a gray hooded Michigan State sweatshirt. (*Id.*) He also received information that made him concerned that a weapon could be present. (Tr., 131.) When Fink got to the Nash Highway interchange, which was about 8 miles from the Super 8, he observed a red Mustang parked on the entrance ramp west bound from Nash Highway to I-96. (Tr., 126.) Fink pulled up along side the Mustang with his overhead lights activated. (Tr., 128.) He saw a black male wearing a gray hooded sweatshirt. (Tr., 126.) Because Fink suspected the driver of being involved in an armed robbery, he and his partner removed him from the car at gunpoint and immediately placed him in handcuffs. (*Id.*) Fink searched Petitioner before putting him in the patrol car and found a small bag of marijuana in his right front pants pocket. (Tr., 127.) Nothing of interest was found during the search of Petitioner's car. Petitioner was very cooperative. (Tr., I, 129.) The Troopers took Petitioner back to the Super 8, where he was identified by the clerk. (Tr.

I, 127-28.) According to Fink, Petitioner remained seated in the back seat of the patrol car for the identification by the Super 8 clerk. (Tr. I, 131-32.)

At the conclusion of trial, the jury found Petitioner guilty of attempted armed robbery and possession of marijuana. (Tr. 172.) A sentencing hearing was held on February 8, 2005. While the sentencing guidelines indicated a range of 14 to 58 months for the attempted armed robbery conviction, the probation department recommended an upward departure of fifteen to thirty years for the offense. (Tr., 174-75.) In light of Petitioner's criminal history of five felonies, including previous armed robberies for which Petitioner was on parole when he committed the instant offense, the trial court sentenced Petitioner to imprisonment of fifteen to thirty years for the attempted armed robbery conviction and 224 days for the drug conviction. (Tr., 175-77.)[3]

### B. Direct Appeal

Petitioner appealed as of right to the Michigan Court of Appeals. His brief, which was filed by counsel on June 23, 2005, raised the following claims of error:

I. DEFENDANT'S CONVICTION FOR ATTEMPTED ARMED ROBBERY MUST BE SET ASIDE FOR THE REASON THAT THERE WAS INSUFFICIENT EVIDENCE TO PROVE THAT THE DEFENDANT WAS ARMED AT THE TIME OF THE ROBBERY, AND THE JURY WAS IMPROPERLY INSTRUCTED ON THE REQUIREMENTS OF THIS ELEMENT OF THE CRIME.

II. IT WAS AN ABUSE OF DISCRETION FOR THE COURT TO TRIPLE THE DEFENDANT'S MINIMUM SENTENCE BY IMPOSING 180 MONTHS INSTEAD OF A SENTENCE BETWEEN 14 AND 58 MONTHS UNDER THE SENTENCING GUIDELINES FOR THE REASON THAT DEFENDANT HAD TWO ADDITIONAL FELONY CONVICTIONS ALLEGEDLY NOT ACCOUNTED FOR IN THE GUIDELINES.

---

[3]The original judgment of sentence entered by the trial court listed a sentence of fifteen to sixty years for attempted on armed robbery. As previously noted, the Michigan Court of Appeals remanded Petitioner's case to the trial court for correction of the judgment of sentence to reflect a sentence of fifteen to thirty years.

III. THE COURT WAS WITHOUT JURISDICTION TO IMPOSE AN AMENDED SENTENCE INCREASING THE DEFENDANT'S MAXIMUM SENTENCE FROM 30 YEARS TO 60 YEARS FOR ARMED ROBBERY, WITHOUT A HEARING, MOTION FOR RESENTECING OR ORDER FROM THE COURT OF APPEALS, WHERE THE ORIGINAL SENTENCE WAS VALID.

(*See* Def.-Appellant's Br. on Appeal, docket #18.) By unpublished opinion issued on July 18, 2006, the Michigan Court of Appeals affirmed Petitioner's convictions, but remanded for correction of the judgment of sentence to reflect a sentence of fifteen to thirty years for the attempted armed robbery conviction. (*See* 7/18/06 Mich. Ct. App. Opinion (MCOA Op.), docket #18.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme Court. Petitioner raised the same three claims raised before the Michigan Court of Appeals. Petitioner was granted leave to amend his application, in which he further developed his first issue. By order entered December 13, 2006, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* Mich. Ord., docket #19.)

### C. Post-conviction relief

According to the petition, Petitioner did not file a motion for relief from judgment. However, Respondent states in his response that Petitioner filed a motion for relief from judgment in the Ionia County Circuit Court on or about May 3, 2007. The trial court denied Petitioner's motion on July 12, 2007. Petitioner did not appeal the decision.

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect

to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably

refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

### I. **Sufficiency of the Evidence**

Petitioner claims that there was insufficient evidence to prove that he was armed at the time of the robbery. Specifically, Petitioner argues that because the victim told the 911 operator that she did not know if Petitioner was armed, the victim did not form the requisite belief that Petitioner was armed. He further claims that in light of the victim's statements on the night of the

alleged attempted robbery, her statements at trial that she thought Petitioner was holding a gun lacked credibility.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The Michigan Court of Appeals rejected Petitioner's argument, stating:

> Defendant first claims there was insufficient evidence to satisfy the "armed" element of his attempted armed robbery conviction. We disagree. To determine whether there was sufficient evidence to support a conviction, we review the evidence de novo, in the light most favorable to the prosecution, and decide whether any rational fact-finder could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999).
>
> At the time of the offense[fn], the elements of armed robbery included "(1) an assault, and (2) a felonious taking of property from the victim's person or presence, while (3) defendant was armed with a weapon as described in [MCL 750.529]." *People v Allen*, 201 Mich App 98, 100; 506 NW2d 869 (2003). MCL 750.529 then included in the scope of "being armed" having "any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon[.]" Although defendant was convicted of *attempted* armed robbery, his argument effectively presumes that he must have been "armed" within the meaning

> of the armed robbery statute at the time of the incident to be guilty of that crime. We assume, without deciding, that this is accurate. Nevertheless, a concealed hand held so as to resemble a pistol may satisfy the "armed" element of armed robbery. *People v Burden*, 141 Mich App 160, 165; 366 NW2d 23 (1985). Such a concealed hand is especially relevant to that element where its claimed character as a weapon is further supported by gestures or verbal indications or threats. *People v Jolly*, 442 Mich 458, 469-470; 502 NW2d 177 (1993). But a jury must be cautioned that the subjective belief of a victim that a robber is armed is insufficient on its own, because "that belief must be induced by the use or fashion of 'any article' with which the assailant is armed." *People v Saenz*, 411 Mich 454, 458; 307 NW2d 675 (1981).
>
> Defendant in this case not only held his hand in his pocket in such a fashion to suggest that he could have a gun, but also announced that he was engaged in a "holdup," a term commonly associated with armed robbery using a gun. Clearly, where one places a hand in a pocket in such a manner that suggests he has a gun and further reinforces that notion with an announcement of an intention to commit an armed robbery, sufficient evidence exists to consider that person to be armed. *Jolly*, *supra* at 469-470. Therefore, there was sufficient evidence to establish any "armed" element of attempted armed robbery. MCL 750.529 was amended by 2004 PA 128 effective July 1, 2004, two days after the commission of this offense.
>
>> [fn] MCL 750.529 was amended by 2004 PA 128 effective July 1, 2004, two days after the commission of this offense.

(MCOA Op. 2-3.)

Although the state court did not cite *Jackson*, 443 U.S. 307, the standard it applied is identical to that employed in *Jackson,* and the state case relied upon by the court rests upon the federal standard. *See People v. Johnson*, 597 N.W.2d 73, 75 (Mich. 1999) (expressly applying the standard articulated in *Jackson*, 443 U.S. 301). The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16 (emphasis added). Under Michigan law, "[A] concealed hand, held in such a manner as to resemble a pistol, may satisfy the 'armed' element of armed robbery." *People v. Burden*, 165, 366 N.W.2d 23, 26 (Mich. Ct. App. 1985). However, a victim's subjective belief that a defendant is armed does not suffice to support an armed robbery conviction, unless the prosecution additionally submits some objective evidence of existence of a weapon or article. *People v. Taylor*,

628 N.W.2d 55, 59 (Mich. Ct. App. 2001). Circumstantial evidence may adequately prove a feigned weapon. *Id.* at 61. "The existence of some object, whether actually seen or obscured by clothing or something such as a paper bag, is objective evidence that a defendant possesses a dangerous weapon or an article used or fashioned to look like one. Related threats, whether verbal or gesticulatory, further support the existence of a weapon or article." *Id.* at 60 (citing *People v. Jolly*, 502 N.W.2d 177, 182-83 (Mich. 1993)). For example, the Michigan Court of Appeals held in *Taylor* that there was sufficient circumstantial evidence to support an armed robbery conviction when the victim testified that, during the robbery, the defendant placed his hand inside his jacket and into the front of his pants, that he saw the bulge in the defendant's jacket, that the defendant's hand grabbed for and remained on the bulge inside his jacket as he took money from the register and left the gas station, and that defendant said, "This is a stick up," while grabbing for the object in his jacket. *Id.* at 61; *see also Jolly*, 502 N.W. 2d at 182 (a bulge in the defendant's vest coupled with a threat by the co-defendant that defendant would shoot or kill the victim if he failed to comply with the demand for money constituted sufficient circumstantial evidence that the defendant was armed).

In this case, the tape of the 911 call that the victim made during the attempted robbery was played for the jury. (Tr., 93.) When the 911 dispatcher asked if the robber was armed, the victim responded, "I don't know, he put his hand, he had his hand in um, his sweatshirt, the front of it." (911 Tape Transcript, 1, docket #1-2.) The victim also gave the following trial testimony:

> Q: All right. What was he doing that led you to believe you should get the money?
>
> A: He has his hand in his pocket of his sweater, motioned. I thought he had a gun so I –
>
> Q: Can you describe for the jury or show them what you mean by that?
>
> A: Yeah. He had his hand like this, in the pouch of his pocket.

Q: Okay. Did you ever see a weapon?

A: No.

Q: What did the hand in the pocket mean to you?

A: I thought he was holding a gun.

***

Q: What did he say?

A: He said, "This is a holdup. Give me all your money."

Q: All right and what did that lead you to believe?

A: I believe he had a gun and he wanted money.

Q: What did it look like he had.

A: A gun.

(Tr., 79-80, 101.)

Thus, while the victim never saw a gun, she testified that Petitioner kept his hand positioned in the pocket of his sweatshirt in such a manner that it looked like he was holding a gun. Further, the victim's testimony that Petitioner announced the robbery by stating, "This is a holdup. Give me all your money," provides further circumstantial evidence to prove a feigned weapon. It is not necessary that a defendant "verbally threaten the victim with some specific bodily harm in order to obtain a conviction of armed robbery." *Taylor*, 628 N.W.2d at 61. "If there is sufficient evidence that, during the course of the robbery, the defendant simulates a weapon so as to induce the victim to reasonably believe he is armed and, by word or conduct, threatens the victim by announcing a robbery or otherwise suggesting the potential use of the weapon, then the defendant may be convicted of armed robbery." *Id*. The position of Petitioner's hand in his pocket coupled

with his statement "This is a holdup" was sufficient evidence that Petitioner either had a gun or simulated one so as to deliberately lead the victim to "reasonably believe" he had a gun. Moreover, to the extent Petitioner contends that the victim's trial testimony lacked credibility, the Constitution leaves it to the jury, not the judge, to evaluate the credibility of witnesses in deciding a criminal defendant's guilt or innocence. *Barker v. Yukins*, 199 F.3d 867, 874 (6th Cir. 1999). Therefore, the decision of the Michigan Court of Appeals that the prosecutor presented sufficient evidence to support the armed robbery conviction was a reasonable application of *Jackson*.

Petitioner also contends that the jury was not properly instructed on the armed element of the offense. With regard to the armed element, the trial court instructed the jury that the prosecutor most prove beyond a reasonable doubt "[t]hat at the time of the assault the defendant was armed with any object used or fashioned in a manner to lead Jamie Porter to reasonably believe that it was a dangerous weapon." (Tr., 163-64.) Petitioner contends that the trial court failed to give the full standard jury instruction on the armed element of the offense, which includes three other definitions of "armed," e.g., that the defendant possessed a weapon designed to be dangerous and capable of causing death or serious injury, that the defendant possessed any other object capable of causing death or serious injury, that the defendant represented orally or otherwise that he was in possession of a weapon.

The Michigan Court of Appeals found that no error had occurred, stating:
> Defendant also argues that the trial court's jury instruction regarding the armed element misstated the law. We disagree. The trial court instructed the jury that satisfaction of this element required: "That at the time of the assault the defendant was armed with any object used or fashioned in a manner to lead [the victim] to reasonably believe it was a dangerous weapon." This is an almost verbatim recital from the language of the statute itself (with the victim's name inserted), which includes in the definition of "being armed" having "any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon[.]" MCL 750.529. Therefore, it does not require reversal because it correctly

stated the law, was not misleading, and "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001).

(MCOA Op. 2.)

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000) (same). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id.* Petitioner clearly fails to establish a violation of his due process rights arising from the trial court's instructions. There was no evidence that Petitioner actually possessed a weapon of any kind or that he represented that he was in possession of a weapon. Consequently, the trial court properly tailored the jury instruction to the only definition of "armed" that could possibly apply in light of evidence presented in the case, i.e., that Petitioner possessed any object used or fashioned in a manner to lead the victim to reasonably believe it was a dangerous weapon. Accordingly, Petitioner is not entitled to habeas corpus relief.

II. **Sentencing**

Petitioner contends that the trial court abused its discretion by departing upward from the sentencing guidelines for the attempted armed robbery conviction. The relevant sentencing guidelines as scored by the trial court provided a minimum range of 14 to 58 months. At the sentencing hearing, the trial court stated that it was departing from the sentencing guidelines and

imposing a 15 to 30 year prison sentence for Petitioner's attempted armed robbery conviction. The trial court's stated rationale for departing from the guidelines was Petitioner's extensive prior offense record, including his "violent past." Petitioner argues that the departure was too severe, and his sentence disproportionate, because his previous felony convictions already were accounted for in the guidelines.

In affirming Petitioner's sentence, the Michigan Court of Appeals noted that "a factor already part of the sentencing guidelines calculations can be used as a basis for departing from the guidelines if the trial court finds that the factor has been given inadequate or disproportionate weight." (MCOA Op., 3.) The Court further stated in part:

> Defendant unquestionably has an extensive offense record. He has eight prior felony convictions. In addition, he was adjudicated of seven offenses as a juvenile. The trial court also reasonably characterized defendant as having a violent past, given the substantial number of these prior offenses that constituted offenses against the person. Specifically, defendant's juvenile adjudication record included three assault and battery offenses and one second-degree criminal sexual conduct offense. His prior adult felony record includes one conviction for larceny from the person and four counts of armed robbery. It is apparent that defendant's extensive prior juvenile and criminal punishments did not deter him from committing the crimes in this case and that the trial court was reasonably concerned with protecting society from further violent conduct by defendant. Notably, defendant had previously received three distinct periods of juvenile detention, a jail sentence, and two distinct periods of imprisonment. Thus, the trial court's decision to depart from the sentencing guidelines did not constitute an abuse of discretion because it was "within the range of principled outcomes." *Id. See also People v Schaafsma*, 267 Mich App 184, 186-187; 704 NW2d 115 (2005) (holding that a trial court articulated a substantial and compelling reason for departing from the sentencing guidelines based on a defendant having "ten felony convictions, thirty-one misdemeanor convictions, and [having] served five prison terms and numerous jail sentences").

(MCOA Op. 4.) The court of appeals also concluded that the trial court's departure did not constitute an abuse of discretion because it is apparent that defendant's sentence was proportionate to the gravity of his offense and prior offense record. *Id.*

Petitioner's claim regarding the trial court's upward departure from the sentencing guideline range must fail because a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987). A Michigan judge's decision in scoring the state guidelines is a pure issue of state law and does not raise a federal question. *See Tironi v. Birkett*, 252 F. App'x 724 (6th Cir. 2007); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003); *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000). Consequently, the trial court's departure from sentencing guidelines is not cognizable in federal habeas review. *See Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993); *see also Koras v. Robinson*, 123 F. App'x 207, 214 (6th Cir. 2005) (state trial judge's alleged failure to articulate the reasons for enhancing habeas petitioner's sentence, in violation of M.C.R. 6.425 and Michigan case law, did not present a basis for federal habeas corpus relief).

Petitioner also contends that his sentence was disproportionate under the analysis enunciated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990). Under *Milbourn*, the sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). It is plain that *Milbourn* was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). A federal court may grant habeas relief solely on the basis of federal law and

has no power to intervene on the basis of a perceived error of state law. 28 U.S.C. § 2254(a); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, Petitioner's claim based on *Milbourn* is not cognizable in a habeas corpus action.

To the extent Petitioner asserts a violation of his Eighth Amendment rights, the United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).[4] "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 302 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence does not present the extraordinary case that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

---

[4]According to Respondent, Petitioner raised an Eighth Amendment claim for the first time in his amended petition. Because Petitioner failed to present his Eighth Amendment claim before the Michigan appellate courts, the exhaustion requirement is not satisfied. Nevertheless, the Court may address Petitioner's Eighth Amendment claim notwithstanding his failure to exhaust his state court remedies. *See* 28 U.S.C. § 2254(b)(2).

### **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.


Date: March 3, 2010                                 /s/ Ellen S. Carmody
                                                                   ELLEN S. CARMODY
                                                                   United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).